### A. Elihu MICHELSON, Plaintiff Below, Appellant,

v.

### Louis C. DUNCAN, G. R. Ellis, Thomas D. Flynn, Joseph W. James, Mitchell P. Kartalia, Paul C. Nagel, Jr., Gordon P. Osler, Arthur E. Rasmussen, George W. Rauch, A. O. Steffey, James W. Tait, Robert C. Trow, Miller Upton, William E. Wehner, John C. Whitehead, D. C. Clark, John T. Gurash and Household Finance Corporation, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted March 15, 1979.

Decided Oct. 2, 1979.

Bertram Bronzaft, of Garwin & Bronzaft, New York City, and Joseph A. Rosenthal of Morris & Rosenthal, P. A., Wilmington, for plaintiff-appellant.

A. Gilchrist Sparks, III, S. Samuel Arsht and Craig B. Smith, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Hubachek, Kelly, Rauch & Kirby, Chicago, Ill., of counsel, for individual defendants-appellees.

David B. Ripsom and Rodman Ward, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for defendant-appellee Household Finance Corporation.

Before HERRMANN, C. J., QUILLEN and HORSEY, JJ.

HORSEY, Justice:

Plaintiff appeals the Court of Chancery's grant of summary judgment in a derivative shareholder's suit brought to set aside stock options granted by the defendants, officers and directors of Household Finance Corporation (hereafter, "HFC") to key employees, including themselves. The source of the controversy between the parties is action taken by the directors in 1971–1974 to modify the Company's 1966 stock option plan (sometimes hereafter, "the Plan") and their issuance of stock options under the Plan as modified. The principal issue on appeal is whether a 1977 non-unanimous shareholder ratification of the earlier modifications of the Plan and of the options granted under the modified Plan entitled defendants to a grant of summary judgment.

For the reasons hereafter stated, we affirm in part and reverse in part the holdings of the Vice Chancellor. More specifically, we hold (1) that the Complaint states a claim for gift or waste of corporate assets; (2) that such claim was not waived or conceded by plaintiff before the court below; (3) that ratification cured or overcame attack on the options granted under the Plan as modified on the ground of lack of director authority but does not dispose of the claim of gift or waste; and (4) as to the latter, trial is required as to the issue of existence and adequacy of consideration for the grant of the new or modified options, but shareholder ratification shifts the burden of proof of failure or inadequacy of consideration from defendants to plaintiff.

The relevant facts are lengthy but are set out in detail in the opinion below, *Michelson v. Duncan*, Del.Ch., 386 A.2d 1144 (1978) and need not be repeated here, except those that are pertinent to this decision.

In 1966, the Board of Directors of HFC authorized a stock option plan whereby certain key employees, including a number of the directors, were granted options to purchase stock in HFC following a two year waiting period after grant. Purchases under the non-tax qualified portion of the 1966 plan, with which we are concerned, were to be made at 90% of the market price at the time of grant. A grant limit of 5,000 shares per year per optionee, later raised to 15,000 shares, was imposed. The options could be exercised at a rate of 10% a year after the second year with the final 30% exercisable following the ninth anniversary of the grant. The Plan was described in proxy materials, but not set out in toto, and was overwhelmingly approved by the shareholders at their 1966 annual meeting.

The transactions in question relate to conduct of the Board of Directors from 1971 to 1974. In 1971 and again in 1973 the Board, acting on the recommendation of the Compensation Committee,* amended the rate of exercise limit to increase that limit from 10% per year to 33⅓% following each of the second, third and fourth anniversaries of a grant. The net effect of this modification was to reduce the minimum time necessary to exercise an entire option from nine years to four years.

In 1974, following a dramatic decline in the market price of HFC stock, the Board of Directors in order to restore incentive to exercise the options, developed and adopted a plan (sometimes hereafter referred to as "the Amended Plan") whereby the existing options would be cancelled and new options issued in their place at the current lower market price. The exercise price of the new options was some $7.00 to $18.00 below the price of the old options. At the same meeting of the directors, 304,900 old options were exchanged for new options and 25,000 new options were issued without exchange. During the next year an additional 71,800 options were granted without exchange.

The Complaint attacks the options granted after December 31, 1973, and specifically the exchange options granted in April, 1974 on essentially two grounds: (1) lack of authority of the Board of Directors to grant the options as modified without prior shareholder approval; and (2) the options issued were void for lack of consideration.

More specifically, plaintiff claims that the Board lacked authority: to grant options in excess of 15,000 shares per optionee per 12 month period; to reduce the option purchase price below that provided under the 1966 plan; to increase the yearly percentage limit of options exercisable; and to exceed the total number of shares available for option under the 1966 Plan. The Complaint seeks (a) cancellation of all the options issued to all optionees, including defendants; (b) an accounting by the individual defendants for all profits realized by them under any options received; and (c) recovery from the individual defendants of all losses and damages sustained by HFC.

Admitting generally the amendments to the 1966 Plan but claiming that they were not contrary to the Plan, defendants, shortly after answer and before any extensive discovery had been undertaken by plaintiff or defendants, moved for summary judgment. In their opening brief filed with their motion, defendants argued: (1) that the cancellation of existing stock options in exchange for the issuance of new stock options at reduced prices is permissible under Delaware law as stated in *Dann v. Chrysler Corp.*, Del.Ch., 41 Del.Ch. 438, 198 A.2d 185 (1963); aff'd sub nom. *Hoffman v. Dann*, Del.Supr., 205 A.2d 343 (1964), cert. denied 380 U.S. 973, 85 S.Ct. 1332, 14 L.Ed.2d 269 (1965); (2) that there was consideration for the new grants in that the optionee-employees were induced to remain with the corporation for an additional two

* The Compensation Committee was established under the 1966 Plan and was composed of non-employee directors. Under the terms of the Plan they were charged with selecting employees eligible for the option plan, determining the number of shares to be granted and fixing the terms for exercising each option. Moreover, the Plan provided that the Compensation Committee could recommend to the Board to waive the exercise limitation for selected optionees.

years; and (3) that the grant of the new options in exchange for the old was not in violation of the terms of the 1966 Plan.

Plaintiff countered with a cross-motion for summary judgment asserting a contrary position; but in his opening brief below, plaintiff did not argue lack of consideration for the options granted or that they represented gifts or waste of corporate assets. Instead, plaintiff limited his argument to alleged lack of director authority.

Defendants then proceeded to obtain from the shareholders of HFC at its upcoming 1977 annual meeting a ratification that was less than unanimous of the actions of the directors complained of in this lawsuit concerning the Amended Plan and stock options issued thereunder by the directors over the period 1971–1974. More or less simultaneously with this shareholder action, defendants filed their reply brief in support of summary judgment, referred to the recently accomplished shareholder ratification and argued that such shareholder action constituted a complete defense to the instant action and in particular to plaintiff's claim of lack of shareholder authority for the Amended Plan and options issued thereunder. Defendants argued that the director action was, at most, voidable, rather than void, and as such, any alleged defect that was the subject of the Complaint was curable by shareholder ratification. Defendants added that plaintiff had, in his briefing of the cross summary judgment motions, abandoned any claim of gift or waste of corporate assets which might have constituted a non-ratifiable action.

Plaintiff responded by supplemental memorandum that the HFC shareholder ratification action had injected a new fact element into the litigation not present at time of filing of his answering brief; that he had not abandoned his claim that the new options were granted without consideration and constituted gifts or waste of corporate assets; and plaintiff proceeded to argue that non-unanimous shareholder ratification was not a legal defense to a claim of gift or waste of corporate assets, even if it were a defense to his claim of lack of shareholder authority.

The Vice-Chancellor, following oral argument, granted summary judgment on defendants' motion and denied summary judgment on plaintiff's cross-motion. The Vice-Chancellor stated that while he would have been required to deny defendants summary judgment had plaintiff alleged gift or waste of corporate assets and presented sufficient evidence in support of such claim, he concluded that plaintiff had failed to plead, or, if pleaded, had later abandoned any claim that the Amended Plan and options granted thereunder amounted to gift or waste of corporate assets. He then found the 1977 shareholder ratification of the directors' 1971–1974 actions to have been fair and complete and thus, the ratification to be "intrinsically valid." The Vice-Chancellor further found no evidence of breach of fiduciary duty by the directors in delegating authority to grant options to the compensation Committee of the Board; and the Vice-Chancellor concluded that the 1977 shareholder ratification cured all remaining challenges to the acts of the defendants-directors. It is that decision which is appealed by plaintiff, A. Elihu Michelson.

## I

Michelson contends that the Court's initial error was its ruling that plaintiff had not alleged a claim of gift or waste of corporate assets. We agree. Paragraph 17 of the Complaint fairly clearly assets two separate and distinct claims: *first*, that the Board's modifications of the option Plan were invalid because contrary to and not authorized under the terms of the 1966 Plan; and *second*, that the "new" options granted in and subsequent to 1974 were without consideration.

By subparagraph 17(a) through (f) and (h) of the Complaint, plaintiff alleged that the directors lacked the authority to modify the 1966 Plan and that the shareholders had not approved the directors' action. By subparagraph 17(g), plaintiff alleged, that the "new" options granted in and subsequent to 1974 were without consideration.

By subparagraph 17(a) through (f) and (h) of the Complaint, plaintiff alleged that the directors lacked the authority to modify the 1966 Plan and that the shareholders had not approved the directors' action. By subparagraph 17(g), plaintiff alleged, "There was no consideration for the grant of the options." By paragraphs 19 and 20 of the Complaint, plaintiff asserted: that there was "no consideration" for the extension of the period during which options could be exercised . . ."; that the cancellation of the outstanding options in exchange for the "new" options enabled "the optionees to acquire HFC's shares at grossly inadequate prices in violation of the terms of the 1966 Plan"; and that modifications of the option price and extension of the "period during which said options could be exercised" were "granted for no consideration and solely in order to enrich the optionees, and particularly said optionees who were officers and directors of HFC."

■ In view of these averments of the Complaint, the Vice-Chancellor's conclusion that plaintiff had not alleged a claim of gift or waste of corporate assets is not supported by the record. While the Complaint does not use the words "gift or waste", the averments that the options were granted for "no consideration" is tantamount to an allegation of gift or waste of assets. The essence of a claim of gift is lack of consideration. The essence of a claim of waste of corporate assets is the diversion of corporate assets for improper or unnecessary purposes. Although directors are given wide latitude in making business judgments, they are bound to act out of fidelity and honesty in their roles as fiduciaries. See, e. g., *Warshaw v. Calhoun*, Del.Supr., 43 Del.Ch. 148, 221 A.2d 487 (1966); 19 Am.Jur.2d, *Corporations*, § 1145 et seq. And they may not, simply because of their position, "by way of excessive salaries and other devices, oust the minority of a fair return upon its investment." *Baker v. Cohn*, N.Y.Supr., 42 N.Y.S.2d 159 at 166 (1942). It is common sense that a transfer for no consideration amounts to a gift or waste of corporate assets.

■ A complaint in a civil action need only give defendant fair notice of a claim and is to be liberally construed. *Wier v. Fairfield Galleries, Inc.*, Del.Ch., 377 A.2d 28 (1977). A claimant need not necessarily expressly aver "gift" or "waste" in order to make out a claim on these theories. So long as claimant alleges facts in his description of a series of events from which a gift or waste may reasonably be inferred and makes a specific claim for the relief he hopes to obtain, he need not announce with any greater particularity the precise legal theory he is using. See *Vale v. Atlantic Coast & Inland Corp.*, Del.Ch., 34 Del.Ch. 50, 99 A.2d 396 (1953).

■ Under our "notice" form of pleadings, an assertion of a claim of lack of consideration for grant of options should be sufficient to put an opposing party on notice of the probable assertion of a claim of gift or waste. Here defendants have not argued that the Complaint failed to state a claim for gift or waste or moved to dismiss the Complaint for failure to allege such a claim. Rather, defendants state only that the Complaint "left considerable doubt" as to what theories of liability plaintiff was pursuing. We conclude that plaintiff did assert a claim for gift or waste of corporate assets. See *Gottlieb v. Heyden Chemical Corp.*, Del.Supr., 33 Del.Ch. 82, 90 A.2d 660 (1952), *Rosenthal v. Burry Biscuit Corp.*, Del.Ch., 30 Del.Ch. 299, 60 A.2d 106 (1948). Since the Vice-Chancellor found to the contrary, his ruling must be reversed.

II

■ We next consider whether plaintiff, having pleaded a claim of gift or waste, waived, disavowed or abandoned such claim, as the Vice-Chancellor found he had. The Vice-Chancellor relies entirely for such finding on the following statement of Michelson's attorney made in his opening brief in the course of answering opposing counsel's reliance upon *Dann v. Chrysler*, supra, as being dispositive of plaintiff's case:

"In any comparison between *Dann (Dann v. Chrysler Corp.*, infra) and the instant case it must be borne in mind that the

objector in *Dann* proceeded on a 'corporate waste' theory, whereas plaintiff in the instant case asserts a director sanctioned violation of the 1966 plan." 386 A.2d 1144 at 1151, n.10.

On the basis of this statement, and apparently only this statement, the Vice-Chancellor concluded, "Michelson does not, however, argue that the amendments of the Plan constituted a corporate gift of assets." 386 A.2d at 1151. The Vice-Chancellor cites no confirmatory statement in the record for counsel's concession other than the above-quoted sentence from counsel's brief; and it appears that the Vice-Chancellor accepted defendants' argument that plaintiff, by the above statement, intended to waive or abandon any claim of gift or waste of assets even if pleaded.

Plaintiff denies any intent to waive a claim of gift or waste or that his attorney's quoted statement should be so construed. He states that the Court apparently did not consider the time or context in which the statement was made, that is, that his claim of gift or waste did not become relevant or essential to sustain plaintiff's case until the after-the-fact shareholder ratification. Further, Michelson contends the Court entirely overlooked plaintiff's Supplemental Memorandum submitted after the ratification and counsel's argument before the Court several months later. An examination of those documents,[1] including transcript of argument before the Court, confirms Michelson's position that he did not waive his claim of gift or waste of corporate assets and that defendants acknowledged it.[2] Since plaintiff pled dual theories

for relief, lack of directoral authority as well as waste of corporate assets, his assertion of one theory cannot be said to have implied or amounted to an abandonment of the other. Based on the foregoing, we think it clear that plaintiff did not waive, abandon or concede his claim of gift or waste; and we hold that the Vice-Chancellor erred in his finding to the contrary.

### III

We now consider the correctness of the Vice-Chancellor's ruling that the 1977 shareholder ratification was fairly accomplished and thus was sufficient to cure any invalidity of the Plan's amendments based on the contention that the 1971–1974 director action was contrary to the terms of the 1966 Plan.

In order to hold the 1977 ratification effective to cure otherwise wrongful acts of the defendant directors, the Vice-Chancellor found (1) that their 1971–1974 acts were merely voidable, not void; and (2) that the ratification was fairly accomplished. These are essential elements to an effective shareholder ratification. See *Kerbs v. California Eastern Airways*, Del. Supr., 33 Del.Ch. 69, 90 A.2d 652 (1952); *Hannigan v. Italo Petroleum Corporation of America*, Del.Supr., 4 Terry 333, 47 A.2d 169 (1945). We will separately consider these two elements of the decision below.

### A.

The essential distinction between voidable and void acts is that the former are those which may be found to

---

1. In his Supplemental Memorandum, plaintiff stated:

   "By lowering the exercise price on their outstanding options and by waiving the exercise price and share limitation for their own benefit, the director-optionees breached their fiduciary duty to HFC by profiting from their own unauthorized acts. The benefits secured by the director-optionees were tained [sic] with self-interest constituting gifts to themselves and a waste of corporate assets. The other defendant-directors breached their fiduciary duty to HFC by permitting officers of the company to make gifts of corporate assets to themselves. Under the law of Delaware, shareholder ratifi-

cation does not preclude the plaintiff from prosecuting such claims.

A shareholder ratification is ineffective for acts which are ultra vires, illegal, fraudulent or wastes or gifts of corporate assets."

2. The transcript includes the following responsive statement of defendants' counsel—that plaintiff's gift or waste argument was a ". . . new argument raised solely in response to the ratification . . . [and] now that the stockholders of HFC have spoken, he has turned around and now is belatedly claiming, yes, this is waste. . . ."

have been performed in the interest of the corporation but beyond the authority of management, as distinguished from acts which are *ultra vires*, fraudulent or gifts or waste of corporate assets. 19 Am.Jur.2d, *Corporations*, § 1247. The practical distinction, for our purposes, is that voidable acts are susceptible to cure by shareholder approval while void acts are not. See *Kerbs*, supra; *Keenan v. Eshleman*, Del.Supr., 23 Del.Ch. 234, 2 A.2d 904 (1938).

The parties disagree as to whether the Vice-Chancellor actually found the directors' action in amending the Plan and granting new options in exchange for outstanding, unexercised options to be contrary to the Plan's terms and therefore voidable. It would appear that he did,[3] but it would be sufficient that he made that assumption as a basis for determining the fairness of the ratification issue. Plaintiff also contends that even if the ratification were found to be fairly accomplished and to relate back to cure otherwise unauthorized director actions, actions for consequential damages against the directors survive.

■ It is the law of Delaware, and general corporate law, that a validly accomplished shareholder ratification relates back to cure otherwise unauthorized acts of officers and directors. *Hannigan v. Italo Petroleum Corporation of America*, supra; 19 Am.Jur.2d, *Corporations*, § 1241. As stated in 5 Fletcher, *Cyclopedia of Corporations*, § 2139 (perm.ed.rev.1976):

"Generally, any act of the board of directors or of any of the officers beyond the scope of their authority fixing or increasing compensation may be ratified by the stockholders when the stockholders have originally authorized such act, and this may be done even after suit is filed, provided the ratification is voted by bona fide stockholders . . .. [W]here a majority of the stockholders of the corporation at a special meeting ratify a stock option plan for key executives which was authorized by interested directors, such ratification cures any voidable defect in the action by the board of directors."

It is only where a claim of gift or waste of assets, fraud or *ultra vires* is asserted that a less than unanimous shareholder ratification is not a full defense.

■ Plaintiff's argument and authority to the contrary are not persuasive. Plaintiff relies on *Gottfried v. Gottfried Baking Co.*, N.Y.App.Div., 1 A.D.2d 994, 151 N.Y. S.2d 583 (1956); but that case is not contrary authority. Apart from the fact that New York, not Delaware, law was in issue, the Court recognized that the question of the effect of subsequent shareholder ratification upon an otherwise invalid act of directors was not before it. Furthermore, Michelson's argument that ratification may cure an invalid act of a director but leave open the question of his liability for consequent losses to the corporation must be rejected as inherently inconsistent. If shareholders have approved an otherwise voidable act, their approval extinguishes any claim for losses based on prior lack of

**3.** Vice-Chancellor Hartnett wrote:
"It should be noted that Michelson's contention that the 1966 plan was violated in that there was no provision in it for cancellation and reissuance of options appears well-founded although of no legal importance in view of the stockholder ratification. Termination is provided for in Paragraph 10 of the tax qualified *and non-tax qualified portions of the plan,* but clearly, even by the most liberal definition of 'termination' there was no authority given to immediately reissue terminated options." 386 A.2d at 1152.
He added later in his opinion by footnote:
"As further evidence that the 'termination' provisions in the 1966 Plan did not authorize cancellation and reissuance of options, and per-

haps did not envision such action, HFC's previous stock option plan of 1963 specifically provided for such a procedure. The proxy statement for the 1963 Plan provided:
'Although the Board of Directors has made no determination with respect to action to be taken in the event of market fluctuations, it is the duty of the Board to devise ways and means to provide adequate incentive to attract and retain the best management talent available. In this effort, the Board reserves the right, with optionee approval, to cancel and reissue options at a lower market price. The Board of Directors may terminate the Plan at any time by resolution which, however may not affect outstanding options.'" 386 A.2d at 1153, n.12.

authority of the directors to undertake such action.

■ We hold that the Vice-Chancellor properly found the directors' action to be voidable to the extent attack on the Plan was premised on lack of director authority and that after-the-fact shareholder ratification related back to cure such invalidity unless the ratification procedure proved to be lacking in fairness or procedurally defective.

### B.

■ The second consideration in determining the effectiveness of the shareholder ratification is whether such ratification was fairly effected and intrinsically valid, as found by the Court below. Shareholder ratification is valid only where the stockholders so ratifying are adequately informed of the consequences of their acts and the reasons therefor. The settled rule in Delaware is that "where a majority of fully *informed* stockholders ratify action of even interested directors, an attack on the ratified transaction normally must fail." (emphasis added). *Gerlach v. Gillam*, Del. Ch., 37 Del.Ch. 244, 139 A.2d 591 at 593 (1958).

■ Whether the shareholders were informed, and thus their ratification valid, turns on the fairness and completeness of the proxy materials submitted by the management to the HFC shareholders prior to the annual meeting in April, 1977. Plaintiff attacks the adequacy of that notice, which the Court below found to be complete and fair.

The notice of annual meeting stated that one of the purposes of the meeting was to seek ratification of corporate action relating to the 1966 stock option Plan; and a predominant portion of the proxy statement was devoted to this subject. The introductory explanation of the proposed resolution of the Board of Directors to be put to the stockholders provided, in part:

"Household's Board of Directors proposes, and recommends that the stockholders vote for, the resolution (set forth in Appendix A hereto) authorizing, approving, ratifying and confirming the actions, described below, of the Board of Directors, its Compensation Committee and other Household officers and employees with respect to the cancellations and grant of new options on April 9, 1974 under the 1966 Employee Stock Option Plan ("Plan") and the periodic waivers of share limitations and percentage limitations on exercise since inception of the Plan. Adoption of the resolution requires the affirmative vote of a majority of all shares represented at the meeting, a quorum being present.

On April 9, 1974, the Corporation cancelled non-tax-qualified options to purchase 304,900 shares of the Corporation's common stock issued pursuant to the Plan then held by directors, officers and employees of the Corporation and its subsidiaries with the agreement of such optionees. Each individual whose non-tax-qualified options were cancelled was granted a new option for the same number of shares but with an exercise price equal to the fair market value of Household's common stock on April 9, 1974. The exercise price of the new options was substantially lower than the exercise prices of the cancelled options. The purpose of these actions was to restore the incentive value of the non-tax-qualified options, which value had been lost because the exercise prices of the options were considerably in excess of the then fair market value of Household's common stock. These actions were similar to actions taken by a number of other corporations and resulted in keeping Household's executive benefits comparable to those of other corporations. See 'Cancellations and Grant of Options' below.

The Plan contemplates the waiver of certain limitations set forth in the Plan and, from time to time after November 1967, the Board of Directors and its Compensation Committee waived certain provisions of the Plan limiting the number of shares which can be subject to options granted to any one individual in any consecutive twelve month period and limit-

ing the annual percentage rates at which the options may be exercised. See 'Waivers of Share Limitation and Exercise Rate Limitation' below.

The April 9, 1974 cancellations and grant of new options increased the opportunity for directors, officers and other optionees to acquire shares of the Corporation's common stock and realize profits upon their subsequent resale, which profits may or may not exist or be substantial, depending upon prevailing market conditions after exercise of the options. The waivers of share limitations and percentage limitations on exercise may have further enhanced opportunities for such profits. See 'Stock Options of Directors and Officers' below. For additional information concerning directors' and officers' salaries and other employee benefits, see 'Remuneration of Officers and Directors' above."

The proxy statement then informed the stockholders of the Michelson suit, the acts of the directors complained of by Michelson and summarized the action of management for which ratification was sought. Particular focus was on the Board's action of April 9, 1974 as well as its related action of waiving share limitation and exercise rate limitations prior thereto. The resolution itself, a five page document, attached to the proxy statement, further detailed the past actions of the Board of Directors sought to be ratified. Of the 37,724,220 shares represented in person or by proxy at the 1977 meeting, 32,670,527 shares (about 87%) were voted in favor of the resolution, 2,444,172 shares (about 6%) were voted against, and the remaining 2,509,521 shares were not voted with respect to the resolution.

The Vice-Chancellor found that the proxy statement "described in detail the stock option plan, the present litigation, and the actions which led to this lawsuit. The proxy statement also contained the complete text of the Stock Option Plan and the Complaint in its appendix." 386 A.2d at 1150. He further found the proxy materials informed the shareholders that the exercise price of the new options was substantially lower than the exercise prices of the

cancelled options; that the purpose of the April 9, 1974 action was to restore the incentive value of the options, (a value which had been lost because the exercise prices of the options were considerably in excess of the then fair market value of Household's common stock that it was contended that the April 9, 1974 cancellations and grant of new options, as well as the periodic waivers of share limitations and percentage limitations on exercise by the Board of Directors and its Compensation Committee, violated the terms of the Plan; that the Board of Directors believed that both the cancellation and grant of new options and waivers were authorized by the Plan; and that the Complaint of Michelson alleged the action of management constituted a breach of the individual defendants' fiduciary duty, and the grant of the new options was without consideration.

In summary, the resolution sought ratification of all of the past action of management concerning the cancellation of existing options and the grant of new options and change in exercise limitations and waiver of grant limitations.

Plaintiff contended before the Court below, and before this Court similarly contends, that the proxy materials were defectively misleading in five principal respects so as to render the ratification ineffective: (1) it was misleading for management to state that they relied upon a provision in the 1966 Plan as to termination of options for the validity of their April 9, 1974 action without disclosing to the shareholders that the "termination" provision of the Plan had not been included in 1966 in the original proxy materials' description of the Plan; (2) management should have been required in the 1977 proxy materials to inform HFC shareholders that the 1966 Plan was not "intended" to permit the management to cancel options and reissue new options as done on April 9, 1974; (3) management should have informed the shareholders that management had "deliberately excluded" from the provisions of the 1966 Plan a provision that had been included in HFC's 1963 stock option plan permitting cancella-

tion and reissuance of options at lower current market prices; (4) management should have informed shareholders that the Compensation Committee was both "interested" and "dominated" by management and that it had "abdicated" its duty in awarding options to determine a reasonable relationship between the value of the options granted and the particular optionee's future benefit to the Corporation; and (5) management had misled the shareholders to believe that the entire terms of the 1966 Plan had been submitted to them in 1966 when in fact substantial omissions were made in the 1966 proxy materials.

The Vice-Chancellor rejected each of plaintiff's contentions and found the proxy and accompanying resolution fully complied with the requirements set forth by this Court in *Lynch v. Vickers Energy Corporation,* Del.Supr., 383 A.2d 278 (1977) requiring not merely adequate but complete disclosure of all relevant matters. The Vice-Chancellor stated:

> "It is my opinion, however, that there was complete candor in the disclosure of the facts which a reasonable stockholder would consider important in making an informed decision to ratify the transactions at issue, and that defendants have met the burden of showing complete disclosure of all the germane facts. *Cahall v. Lofland,* Del.Ch. [12 Del.Ch. 299], 114 A. 224 (1921), aff'd Del.Supr., 118 A. 1 (1922); *Lynch v. Vickers,* supra. I find that the stockholders were informed of the essential facts surrounding the instant suit. They were provided with the complete text of plaintiff's complaint, and, all alleged wrongs for which ratification was sought were enumerated in detail." 386 A.2d at 1154.

We agree with the Vice-Chancellor that it was not error, as Michelson contends, for management to fail to inform the shareholders of the items enumerated by Michel-son. We say so because it would have been wholly the unreasonable for management to be required to have made such declarations in 1977 proxy materials. Such statements (a) were not factual assertions; (b) in some respects were not factually correct; (c) were inconsistent with management's position; or (d) called for legal conclusions. Therefore, we affirm the Vice-Chancellor's holding that the ratification was effective and "intrinsically valid."

Having found (a) the 1971–1974 directors' actions to be voidable only to the extent such actions are claimed to have been contrary to the Plan's terms; and (b) the shareholder ratification thereof to have been intrinsically valid, we affirm the Vice-Chancellor's grant of summary judgment for defendants as to plaintiff's claim that the shareholder ratification was not adequate to rectify unauthorized director action. However, as previously stated, ratification does not dispose of plaintiff's claim that there was no consideration for the option grants and that they constituted gifts or waste of corporate assets.

## IV

This brings us to the final question, namely, whether Michelson presented sufficient evidence as to gift or waste to preclude summary judgment in defendants' favor.

Defendants make essentially two arguments in support of their position that there is no triable issue as to gift or waste. *First,* they contend plaintiff has failed to establish any material issue of fact relating to the question of adequacy of consideration for the cancellation of the old options in exchange for grant of the new options. *Second,* defendants claim that there is sufficiency of consideration as a matter of law by application of the pertinent facts to Delaware statute law, 8 *Del.C.* § 157,[4] and

---

4. 8 *Del.C.* § 157 provides in pertinent part:
   "§ 157. *Rights and options respecting stock.*
   Subject to any provisions in the certificate of incorporation, every corporation may create and issue . . . rights or options entitling the holders thereof to purchase from the

corporation any shares of its capital stock
. . . . .

   "The terms upon which . . . such shares may be purchased from the corporation upon the exercise of any such right or option, shall be such as shall be stated in the

decisional law under *Hoffman v. Dann,* supra. We will now take up each of these arguments.

### A.

Defendants contend that under *Gottlieb v. Heyden,* supra, and *Kaufman v. Schoenberg,* Del.Ch., 33 Del.Ch. 211, 91 A.2d 786 (1952), shareholder ratification shifted the burden of proof of lack of consideration to plaintiff. Since plaintiff has failed to offer any evidence thereof, defendants claim that summary judgment below should be affirmed.

Plaintiff does not agree that there is insufficient evidence in the record of gift or waste of assets to raise a triable issue of fact. Plaintiff states this evidence includes the following director action: across the board, indiscriminate modifications of the 1966 Plan; lowering the exercise prices; accelerating the exercise rates; and the granting of new options in 1974 with no parity of services rendered to value of options granted.

■ Delaware decisional law supports plaintiff's position. Claims of gift or waste of corporate assets are seldom subject to disposition by summary judgment; and when there are genuine issues of fact as to the existence of consideration, a full hearing is required regardless of shareholder ratification. See *Kerbs v. California Eastern Airways,* supra; *Gottlieb v. Heyden Chemical Corp.,* supra. "The determination of whether or not there has been in any given situation a gift of corporate assets does not rest upon any hard and fast rule. It is largely a question of fact." *Gottlieb v. McKee,* Del.Ch., 34 Del.Ch. 537, 107 A.2d 240 at 243 (1954). In *Saxe v. Brady,* Del. Ch., 40 Del.Ch. 474, 184 A.2d 602 (1962), Chancellor Seitz stated, "Where waste of corporate assets is alleged, the court, notwithstanding independent stockholder ratification, must examine the facts of the situation." (184 A.2d at 610). In *Heyden,* this Court stated:

certificate of incorporation, or in a resolution adopted by the board of directors . . . . . In the absence of actual fraud in the transaction, the judgment of the directors as to the

"An important question, which is not yet answered, is whether these services and these options can sensibly be deemed to be the subject of a fair exchange. This is obviously not a mere question of law. An issue of fact is raised, as to which, as yet, no evidence has been taken." 33 Del.Ch. 177, 91 A.2d 57 at 59.

Similarly, in *Gottlieb v. McKee,* supra, the Court of Chancery, finding affidavits insufficient and otherwise inadequate for determination of an issue of gift or waste of assets, denied summary judgment for defendants as to a corporate opportunity claim and held a full hearing was required, notwithstanding shareholder ratification. See also *Gamble v. Penn Valley Crude Oil Corp.,* Del.Ch., 34 Del.Ch. 359, 104 A.2d 257 (1954), cross-motions for summary judgment as to right of plaintiff to exercise and receive stock options were denied on the state of the record, the Court stating, "Vital facts are either lacking or in conflict and it would therefore be inappropriate to attempt either to assume them or to evaluate them on cross-motions for summary judgment." 104 A.2d at 263.

■ While, of course, each case must be determined on its own facts, the above cases indicate a strong disfavor for summary judgment in stock option claims where waste of corporate assets is alleged. Here, Michelson has, by his Complaint and affidavit of his attorney, raised material issues of fact as to the existence of consideration for grant of options, thus making summary judgment inappropriate on the issue of waste of corporate assets.

### B.

Defendants alternatively argue that 8 *Del.C.* § 157 rules out any fact issue by making any consideration sufficient as a matter of law, relying on the following language of that section: "In the absence of actual fraud in the transaction, the judg-

consideration for the issuance of such rights or options and the sufficiency thereof shall be conclusive."

ment of the directors as to the consideration for the issuance of such rights or options and the sufficiency thereof shall be conclusive." The meaning of the quoted sentence is clear. However, defendant goes too far in his reliance on this section. Implicit in that section is the existence of some consideration, and assuming that fact begs the question at issue in a challenge of wasting corporate assets. See *Kerbs,* supra; *Frankel v. Donovan,* Del.Ch., 35 Del.Ch. 433, 120 A.2d 311 (1956).

Section 157 was intended to protect directors' business judgment in consideration inuring to the corporation in exchange for creating and issuing stock options. However, to assert that there was no consideration for the cancellation of the existing options in exchange for new options—as asserted here—is far different from asserting that there was inadequate consideration for doing so. Whether or not § 157 disposes of an inadequacy of consideration claim is not the issue before us. Here, the contention is made that there was *no* consideration received by HFC from the grant of the new or exchange options in 1974. We do not read § 157 as intended to erect a legal barrier to any claim for relief as to an alleged gift or waste of corporate assets in the issuance of stock options where the claim asserted is one of absolute failure of consideration.

Defendants also claim that under *Hoffman v. Dann,* supra, the grant of options by disinterested directors and ratification by stockholders precludes any attack on the option plan. Defendant's reliance on this case is misplaced. It is important to note that *Hoffman* arose in the context of approval of a contested settlement. The standard for approval of a settlement is significantly different from that used for grant of summary judgment. In response to the challenge of wasting corporate assets, in *Hoffman* this Court found that there was not a "probability of substantial recovery" by the challenging shareholders. The question we must resolve here is not the likelihood of success, but rather whether or not there is a material issue of fact in question.

*Hoffman* should not be interpreted as contradicting the well-established rule that non-unanimous shareholder approval cannot cure an act of waste of corporate assets. *Kerbs,* supra.

Reinforcing our conclusion that the case should be remanded for further proceedings is plaintiff's contention that there has not been an adequate time provided for discovery; that discovery has not included any depositions or extensive interrogatories to date; and that since the pendency of the motion for summary judgment, all further discovery has been stayed. Though this has been with the consent of the parties, it would be inappropriate at this stage of the case for plaintiff's right to discovery to be said to have been foreclosed.

## C.

We further hold, as the Vice-Chancellor ruled, that shareholder ratification shifted the burden of proof of want or inadequacy of consideration for the grant of the options from defendants to plaintiff. See *Gottlieb v. Heyden Chemical Corporation,* supra, and *Kaufman v. Schoenberg,* supra. In *Gottlieb,* this Court stated that ". . . [T]he entire atmosphere is freshened and a new set of rules invoked where formal approval has been given by a majority of independent, fully informed stockholders. . . ." 91 A.2d at 59.

Similarly, in *Kaufman,* the Chancellor stated that in the absence of independent stockholder ratification, interested directors have the burden of showing that the consideration to be received for the grant of options represented a "fair exchange", but the burden shifts where there has been shareholder ratification:

> "Where there has been independent stockholder ratification of interested director action, the objecting stockholder has the burden of showing that no person of ordinary sound business judgment would say that the consideration received for the options was a fair exchange for the options granted." 91 A.2d 791.

See also *Fidanque v. American Maracaibo Co.,* Del.Ch., 33 Del.Ch. 262, 92 A.2d 311 (1952), stating:

"Even in cases, such as a case involving interlocking directorates, where the burden is upon the directors to prove the validity of their action and their good faith, a stockholder ratification shifts the burden of proof to the objector. *Gottlieb v. Heyden Chemical Co.,* supra." 92 A.2d at 321.

\*   \*   \*   \*   \*   \*

Affirmed in part and reversed in part.