IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LAURIE J. TAPLIN, | : | |
| | : | |
| Appellant, Plaintiff-Below, | : | C.A. No. K18A-07-004 JJC |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| KATHLEEN SCHUITEMAKER | : | |
| | : | |
| Appellee, Defendant-Below. | : | |

**MEMORANDUM OPINION & ORDER**

*Upon Appeal from the Court of Common Pleas*
***REVERSED, in part and REMANDED***

Submitted: October 24, 2018
Decided:  January 7, 2019

Gary E. Junge, Esquire, Schmittinger & Rodriguez, Dover, Delaware, Attorney for Appellant.

Paul G. Enterline, Esquire, Georgetown, Delaware, Attorney for Appellee.

**Clark, J.**

Appellant Laurie Taplin (hereinafter "Ms. Taplin") appeals a trial decision of the Court of Common Pleas in favor of Appellee Kathleen Schuitemaker (hereinafter "Ms. Schuitemaker"). The suit involved Ms. Taplin's purchase of a mobile home for her sister, Ms. Schuitemaker, in 2012. Beginning in 2012, Ms. Taplin also paid many of Ms. Schuitemaker's living expenses for approximately three years. Ms. Schuitemaker had promised to repay Ms. Taplin for the home and to repay at least some of the expenses when Ms. Schuitemaker received a disability settlement. The settlement came in May 2016, but Ms. Schuitemaker did not repay her sister. By that time, she indicated she no longer wanted to purchase the mobile home.

As a result, Ms. Taplin filed suit in the Court of Common Pleas. After a trial, the court decided in favor of Ms. Schuitemaker. It dismissed Ms. Taplin's contract claim holding that the evidence did not support that she had a legally enforceable contract with her sister. On alternative grounds, the Court of Common Pleas dismissed the suit based upon the statute of limitations.

Ms. Taplin appeals a decision to deny her motion to amend her complaint pursuant to Court of Common Pleas Civil Rule 15(b) (hereinafter "Rule 15(b)"). In that motion, she sought to include claims for *quantum meruit*, *quantum valebant* and unjust enrichment (hereinafter the "quasi-contractual claims"). Ms. Taplin also appeals the trial court's ruling that the statute of limitations barred her claims. Finally, she appeals its decision to dismiss her suit pursuant to Court of Common Pleas Rule 41(b) (hereinafter "Rule 41(b)").

For the reasons that follow, the Court of Common Pleas erred when denying Ms. Taplin's motion to amend the pleadings pursuant to Rule 15(b). Furthermore, the statute of limitations regarding her quasi-contractual claims did not expire. Finally, since the trial court should have permitted an amendment, it erred when dismissing the suit because it did not consider her quasi-contractual claims. As a

2

consequence, the Court of Common Pleas decision must be **REVERSED**, **in part** and **REMANDED** for action consistent with this decision.

## I.     FACTS OF RECORD AND PROCEDURAL BACKGROUND

In 2012, Ms. Taplin purchased a $41,954.00 home intended for use and ultimate purchase by her younger sister, Ms. Schuitemaker. At that time, Ms. Schuitemaker could not contribute to the purchase of the home or its improvement. The evidence established that Ms. Schuitemaker intended at the outset to buy the home from her sister after receiving a disability settlement that she expected at some point in the future.

Trial evidence supported that Ms. Schuitemaker selected the home and then Ms. Taplin paid for various upgrades. She also paid for many of Ms. Schuitemaker's living expenses such as utilities, car insurance, automotive repair, and pet expenses on an ongoing basis. Ms. Taplin testified that her sister had agreed to reimburse her for these expenses in addition to purchasing the mobile home from her after her sister received her disability settlement.

At some point, Ms. Schuitemaker decided that she no longer wanted to purchase the home. Ms. Taplin testified that she then considered her sister to owe her $700.00 a month for rent. She backdated this amount to the day Ms. Schuitemaker occupied the home.

In March 2015, Ms. Schuitemaker abandoned the home, but left her belongings in it until sometime in 2016. On May 1, 2016, Ms. Schuitemaker received her disability settlement, but informed Ms. Taplin by email that she would not buy the home because the settlement was less than she had expected. For the first time, in an email of July 1, 2016, Ms. Schuitemaker denied owing any money to Ms. Taplin.

3

Ms. Taplin then filed a *pro se* debt action in the Court of Common Pleas on March 20, 2017. In her complaint she wrote that "on or about June 2012 Defendant borrowed from Plaintiff the sum of $41,954.00 promising to repay that amount" and that the loan was never repaid. While still *pro se*, Ms. Taplin provided in the pretrial stipulation that Ms. Schuitemaker acknowledged her debt to Ms. Taplin, but then refused to repay it. The pretrial stipulation further provided that "[t]he Plaintiff seeks a money judgment against defendant for various . . . claims related to the assistance the Plaintiff provided defendant due to defendant's inability to work due to disability." The trial began on March 5, 2018, and concluded on March 28, 2018.

During opening statements on March 5, 2018, Ms. Taplin's counsel stated that she sought restitution based upon the theories of *quantum meruit*, *quantum valebant* and unjust enrichment. Those causes of action were not referenced in the complaint. Ms. Schuitemaker raised no objection to Ms. Taplin's indication in her opening statement that she was pursuing quasi-contractual claims. During that first day of trial, on March 5, 2018, Ms. Taplin attempted to introduce ledger entries and receipts for expenses allegedly paid on Ms. Schuitemaker's behalf during calendar years 2012, 2013, and 2014. Ms. Schuitemaker objected to the admissibility of the receipts. The court sustained the objection on the ground that Ms. Taplin had not produced them during discovery. Nevertheless, it ruled that although the receipts were not admissible because they were not produced in discovery, Ms. Taplin could testify regarding the payments. Namely, the court permitted her to testify in detail regarding the nature, time, and amounts of the various payments made for Ms. Schuitemaker's benefit. At that point, the Court of Common Pleas continued the case at Ms. Schuitemaker's request to enable her to review the receipts for purposes of cross-examination.

On March 28, 2018, the trial reconvened. Ms. Taplin testified at length and in detail regarding the nature and amount of the payments. The expenses included

4

amounts she sought in restitution for water bills, electric bills, car expenses, home repairs, and renovations targeted solely for Ms. Schuitemaker's benefit. For instance, Ms. Taplin testified that she set up a home office for her sister and purchased materials to improve the yard to her sister's liking. Ultimately, the court permitted testimony regarding these expenses and admitted Ms. Taplin's summary ledger entries into evidence without objection. Furthermore, in the plaintiff's case-in-chief, Ms. Bonnie Lee Miller, sister to Ms. Taplin and Ms. Schuitemaker, testified. She confirmed that she overheard Ms. Schuitemaker tell Ms. Taplin that she would repay her for the house and other expenses as soon as she received her disability settlement.

At the close of Ms. Taplin's case, Ms. Schuitemaker motioned the court to dismiss the case pursuant to Court of Common Pleas Civil Rule 41(b) arguing that Ms. Taplin produced no admissible evidence regarding a rental agreement or an agreed rent amount; that Ms. Taplin received a benefit from buying the house for Ms. Schuitemaker because she claimed her as a dependent on her tax returns; and that the claims were barred by the three-year statute of limitations. Furthermore, at that point, for the first time, Ms. Schuitemaker raised an objection to the quasi-contractual claims because they were not raised in the complaint. The trial court deferred its decision regarding the Rule 41(b) motion.

In Ms. Schuitemaker's portion of the case, she testified that "at one point in time," she had told Ms. Taplin she would pay for the home. She claimed she had no set time in mind but then acknowledged that at one point she represented she would repay her when she received her disability settlement.

After the close of the evidence, the parties provided written closing arguments to the court. By formal motion, Ms. Taplin also moved to amend the pleadings to conform to the evidence presented at trial to include her quasi-contractual claims. Ms. Schuitemaker objected to the motion, arguing that Ms. Taplin presented no

5

evidence to support the amendment, and that Ms. Taplin failed to allege such causes of action in her complaint or in the pre-trial stipulation.

The Court of Common Pleas granted Ms. Schuitemaker's motion to dismiss, finding that Ms. Taplin had failed to prove a landlord-tenant relationship or the amount of contractual damages due. In so holding, the court concluded that there was no residential lease agreement between the parties and that Ms. Taplin presented no expert testimony regarding rental value.

The trial court also denied Ms. Taplin's motion to amend the pleadings. The trial court wrote that Ms. Taplin failed to meet requirements to permit such an amendment as set forth in *State ex rel. Structa-Bond v. Mumford & Miller Concrete*.[1] Other than that case citation, the trial court's reasoning for denying the amendment was limited to a statement that Ms. Schuitemaker would be prejudiced by the amendment. The court provided no reasons for finding such prejudice and it did not weigh the interests referenced in Rule 15(b). It did, however, find certain facts to be undisputed. Namely, it recognized: (1) that Ms. Taplin purchased the residence for her sister's benefit; (2) that Ms. Taplin paid many of her sister's living expenses for a three-year period; and (3) that Ms. Schuitemaker refused to pay Ms. Taplin upon receipt of her disability payment in May 2016.

After the close of the evidence, a formal motion to amend the pleadings, and the closing argument letters, the Court of Common Pleas granted Ms. Schuitemaker's motion to dismiss. Because the court had denied the motion to amend the complaint to include quasi-contractual claims, the dismissal terminated the case. In an alternative ruling, the Court dismissed Ms. Taplin's suit, post-trial, based upon the statute of limitations.

---

[1] *State ex rel. Structa-bond v. Mumford & Miller Concrete, Inc.*, 2002 WL 31101938, at *1 (Del. Super. Sep. 17, 2002).

6

## II.    STANDARD OF REVIEW

On appeals from the Court of Common Pleas, the Superior Court acts as an intermediate appellate court and performs the same function as that of the Supreme Court.[2]  The standard of review includes determining whether there was legal error and whether the factual findings made by the trial judge were sufficiently supported by the record and were the product of an orderly and logical deductive process.[3]

## III.    ANALYSIS

This appeal is limited to three issues.  The first is whether the Court of Common Pleas abused its discretion when denying Ms. Taplin's motion to amend her pleadings.  The second is whether it committed legal error when it held that Ms. Taplin's claims were barred by the statute of limitations.  The third is whether the court erred when it granted Ms. Schuitemaker's motion to dismiss pursuant to Rule 41(b).

### A. The trial court abused its discretion when denying Ms. Taplin's Rule 15(b) motion to include quasi-contractual claims.

Ms. Taplin first challenges the trial court's decision to deny her motion to amend her complaint.  In her opening, Ms. Taplin raised quasi-contractual claims and then presented evidence throughout the trial regarding those claims.   After the close of the evidence, Ms. Taplin formally moved to amend her complaint pursuant to Rule 15(b) to conform to the evidence presented at trial.  Specifically, she sought to include the claims of *quantum meruit*, *quantum valebant* and unjust enrichment.  Ms. Taplin argued that the complaint, filled *pro se* before she acquired an attorney, provided sufficient notice of her claims to avoid unfair prejudice.

---

[2] *Fiori v. State*, 2004 WL 1284205, at *1 (Del. Super. May 26, 2004).
[3] *Id.*

Pursuant to Court of Common Pleas Civil Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] A complaint must not be dismissed for an imperfect statement of the legal theory supporting its claims.[5] On balance, the complaint in a civil action "need only give defendant fair notice of a claim and is to be liberally construed."[6] Furthermore, *pro se* filings are given considerable deference.[7] Ms. Taplin represented herself when filing her complaint and when she participated in the pretrial conference.

Amendments to pleadings pursuant to Rule 15 are to be allowed in the absence of prejudice to the opposing party.[8] The purpose of the rule is to encourage the disposition of cases on their merits.[9] The decision to permit or deny an amendment is left to the discretion of the trial judge.[10] In applying his or her discretion, however, the trial judge must "always permit or deny the amendment by weighing the desirability of ending the litigation on its merits against possible prejudice or surprise to the other side."[11]

Rule 15(b) provides for the amendment of a complaint at any time, even after judgment, as follows:

---

[4] Ct. Com. Pl. Civ. R. 8(a)(2).

[5] *Johnson v. City of Shelby*, *Miss.*, 135 S.Ct. 346 (2014).

[6] *Michelson v. Duncan*, 407 A.2d 211, 217 (Del. 1979).

[7] *Vick v. Haller*, 522 A.2d 865, 1987 WL 36716, at *1 (Del. Mar. 2, 1987) (TABLE) (holding that "[a] pro se complaint, however inartfully pleaded, may be held to a somewhat less stringent technical standard than formal pleadings drafted by lawyers, and it is dismissed for failure to state a claim only if it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

[8] *Structa-Bond*, 2002 WL 31101938, at *2 (referring to Superior Court Civil Rule 15 which is identical to the Court of Common Pleas rule). *See also Dunfee v. Blue Rock Van & Storage, Inc.*, 266 A.2d 187, 188 (Del. Super. 1970) (recognizing that Delaware's pleading policy is "to be liberal in permitting amendments to pleadings unless the opposing party would be seriously prejudiced thereby").

[9] *Id.*

[10] *Id.*

[11] *Bellanca v. Bellanca*, 169 A.2d 620, 622 (Del. 1961).

8

[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the Court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice the objecting party in maintaining that party's action or defense upon the merits. The Court may grant a continuance to enable the objecting party to meet such evidence.[12]

Rule 15(b) is modeled after the Federal rule. Federal cases demonstrate that an amendment pursuant to Rule 15(b) "should be permitted if the record indicates that the parties understood that the evidence was aimed at the unpleaded issue."[13] The assumption behind Rule 15 is that "pleadings are not an end in themselves but are designed to assist, not deter, the disposition of litigation on its merits."[14] The party opposing the amendment has the burden of showing that the amendment would be prejudicial to that party's defense.[15]

Here, Ms. Taplin sought to amend her *pro se* complaint to add claims for *quantum meruit*, *quantum valebant* and unjust enrichment. *Quantum meruit* is a principle of restitution arising from a cause of action in quasi-contract.[16] The doctrine of *quantum meruit* literally means "as much as he deserves" and is a basis for recovery to prevent unjust enrichment.[17] In order to recover in *quantum meruit*,

---

[12] Ct. Com. Pl. Civ. R. 15(b).

[13] *Structa-Bond*, 2002 WL 31101938, at *3.

[14] *Belanca*, 169 A.2d at 622.

[15] *Structa-Bond*, 2002 WL 31101938, at *3.

[16] *Avantix Laboratories, Inc., v. Pharmion, LLC*, 2012 WL 2309981, at *10 (Del. Super. Jun. 18, 2012).

[17] *Id.*

9

"the performing party under a contract must establish that it performed services with an expectation that the receiving party would pay for them, and that the services were performed under circumstances that should have put the recipient on notice that the performing party expected the recipient to pay for those services."[18] Recovery under *quantum meruit* is limited to the reasonable value of the services provided, not the value of the benefit received.[19] Similarly, to prevail on *quantum valebant*, a plaintiff must show that the defendant received materials from the plaintiff and enjoyed the benefit of them.[20] Finally, unjust enrichment is itself a cause of action based on the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity or good conscience."[21] In order to recover for a claim of unjust enrichment, a plaintiff must prove: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law.[22]

The Court of Common Pleas relied on the Superior Court's decision in *Structa-Bond* when denying Ms. Taplin's motion to amend. It did so, however, without further analysis. In *Stucta-Bond,* the trial court *permitted* an amendment of a complaint under Rule 15(b) to add claims of *quantum meruit* and *quantum valebant*. That court found that "Rule 15(b) addresses the need for the pleadings to conform to the evidence and issues" and permitted an amendment where "the evidence presented at trial was identical to what it would have been if the [c]omplaint had included claims of *quantum meruit* and *quantum valebant*."[23] Relevant to the

---

[18] *Id.*
[19] *Id.*
[20] *Structa-Bond*, 2002 WL 31101938, at *3.
[21] *Avantix*, 2012 WL 2309981, at *12.
[22] *Id.*
[23] *Structa-Bond*, 2002 WL 31101938, at *3.

present case, the *Structa-Bond* decision recognizes that facts necessary to evaluate the elements of the quasi-contractual causes of action matched the facts presented by both parties at trial in the contract action.[24] Under those circumstances, the court held that the defendant could not show prejudice if the complaint were amended.[25]

*Structa-Bond*, in fact, supports Ms. Taplin's argument that an amendment pursuant to Rule 15(c) was appropriate. Namely, it illustrates the considerable overlap between the relevant facts in contract claims as compared to quasi-contractual claims seeking restitution. In other words, contract claims and quasi-contractual claims regarding the same transaction and occurrence involve substantially the same evidence. The court in *Structa-Bond* recognized that an amendment should be granted under Rule 15(b) "if the record indicates that the parties [understood] that the evidence was aimed at the unpleaded issue."[26]

Ms. Taplin's counsel indicated at the outset of the trial that she sought recovery on these alternative quasi-contractual theories. Without objection throughout her case-in-chief, Ms. Taplin testified regarding expenditures supporting a claim for restitution. As in *Structa-Bond*, Ms. Taplin raised her quasi-contractual claims in her opening.[27] As in *Structa-Bond*, she also offered evidence supporting her quasi-contractual claims.[28] As in *Structa-Bond*, Ms. Schuitemaker did not object to the introduction of this evidence until after Ms. Taplin's case-in-chief.[29] Accordingly, as in *Structa-Bond*, Ms. Schuitemaker impliedly consented to try these claims.

---

[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

Other Delaware authority similarly recognizes the appropriateness of permitting an amendment notwithstanding a lack of implied consent. For instance, in *Belanca v. Belanca*, the Delaware Supreme Court reviewed the Superior Court's decision to permit an amendment pursuant to Superior Court Civil Rule 15(b) to state a claim for *quantum meruit*.[30] There, the court also recognized that much of the evidence offered in support of the plaintiff's breach of contract claim was admissible in support of that claim.[31] The Delaware Supreme Court held that because of the nearly total overlap in the evidence necessary for contractual and quasi-contractual claims, there was no prejudice to the non-moving party.[32]

In the case at hand, the Court of Common Pleas abused its discretion when denying Ms. Taplin's Rule 15(b) motion. While the claims for *quantum meruit*, *quantum valebant* and unjust enrichment were not included in the original complaint, Ms. Taplin raised them, without objection, during her opening statement. She then introduced evidence relevant to quasi-contractual remedies. The Court recognizes that Ms. Taplin's receipts were not admitted into evidence. Nevertheless, her ledger sheets were admitted. She took them and her receipts to the witness stand while testifying without objection regarding the nature, amount, and time of expenditures. The evidence provided substantial support for the fact that Ms. Taplin made the payments in reliance upon Ms. Schuitemaker's promise to repay her.

In addition to her implied consent during the course of the trial, *Ms. Schuitemaker herself* included the following in *her portion* of the pretrial stipulation: the nature of the case involves "various contradicting claims *related to the assistance the plaintiff provided the defendant*." Ms. Schuitemaker's inclusion of such language within her portion of the pretrial stipulation supports a finding of express

---

[30] *Belanca*, 169 A.2d at 621-622.
[31] *Id.* at 622.
[32] *Id.*

consent.   Given Ms. Schuitemaker's reference to such claims in the pretrial, and the lack of trial surprise, the claims were at a minimum tried with the implied consent of the parties. Accordingly, the trial court abused its discretion when not finding Ms. Schuitemaker impliedly consented to try these issues.  The analysis should have ended at that point.[33]

In the alternative, the trial court recited in its opinion that an amendment would have prejudiced Ms. Schuitemaker.  Although the trial court did not address the issue of trying the claims with consent, it proceeded directly to the issue of prejudice.  When a trial court has discretion, it must articulate a basis for its decision; to not so constitutes an abuse of discretion.[34]  Here, it recited merely that there was prejudice. In exercising its discretion, the court should have weighed whether "the objecting party [satisfied] the Court that the admission of such evidence would prejudice the objecting party in maintaining that party's action or defense upon the merits."[35]   Rule 15(b) and the relevant case authority require a balancing of the interests of deciding the case on the merits versus any unfair surprise to the other side.

Aside from the trial court's recitation limited to a finding of prejudice, a review of the record after applying a deferential abuse of discretion review demonstrates that there was no basis on the record to find unfair prejudice.   The procedural history includes that Ms. Schuitemaker included language that refers to quasi-contractual claims in her own nature of the case portion in the pretrial stipulation.  A party is not prejudiced by trying a claim that the party recognized in the pretrial stipulation was fully at issue.    Furthermore, the trial began on March

---

[33] *See* Ct. Com. Pl. Civ. R. 15 (stating that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in *all* respects as if they had been raised in the pleadings") (emphasis added).
[34] *Brooks v. State*, 58 A.3d 982, 2012 WL 6553923, at *1 (Del. De. 13, 2012) (TABLE).
[35] *Id.*

5th, 2018, and on that day included the presentation of almost no evidence. After argument regarding the admissibility of restitution related receipts, the trial court granted a continuance at Ms. Schuitemaker's request from March 5 until March 28, 2018, to address what were then undisputedly *known* claims. A continuance "to meet such evidence" is the exact procedure contemplated by Rule 15(b).[36] During that intervening two weeks, Ms. Schuitemaker had further notice that the quasi-contractual claims were at issue and had Ms. Taplin's proposed restitution-related evidence available to permit her to fully address the claims. In addition to this procedural history, many emails sent between the parties and available to both sides prior to trial referenced the support related payments at issue in Ms. Taplin's quasi-contractual claims. There was no surprise from the beginning of the trial through its conclusion that these claims were at issue.

On balance, when reviewing the record for an abuse of discretion, the Court finds that the record overwhelmingly supports that Ms. Schuitemaker impliedly consented to try these issues. Furthermore, had there been no implied consent, the trial court abused its discretion when finding unfair prejudice to Ms. Schuitemaker in light of the overlapping nature of the evidence relevant to these contractual and quasi-contractual claims.

### B. The claims were not barred by the statute of limitations.

Ms. Taplin next challenges the trial court's decision that her claims were barred by the statute of limitations. The Court of Common Pleas found that because the damages Ms. Taplin testified to were related to expenses incurred in 2012, 2013 and 2014, they were barred by the three-year statute of limitations. Ms. Taplin counters that her debt claim, and her quasi-contractual claims, did not accrue before Ms. Schuitemaker first wrote on July 1, 2016 that she "owe[d] her nothing."

---

[36] *See* Ct. Com. Pl Civ. R. 15 (providing that "[t]he Court may grant a continuance to enable the objecting party to meet such evidence.").

Under 10 *Del. C.* § 8106, "[n]o action… to recover a debt not evidenced by a record or by an instrument under seal, [and] … no action based on a promise …, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant, shall be brought after the expiration of three years from the accruing of the cause of such action."[37]  A cause of action accrues, and thus triggers the running of the statute of limitations, at the time of the alleged wrongful act or breach.[38]  Both contract actions and quasi-contractual claims are controlled by Section 8106.[39]

The accrual of a claim in restitution or unjust enrichment is governed by the same general logic as any other sort of claim.  Namely, it accrues at the point when the eventual action might first have been successfully brought.[40]  The statute of limitations for a claim of unjust enrichment generally begins to run upon the occurrence of (1) the wrongful act giving rise to a duty of restitution, or (2) when all of the elements of unjust enrichment are present.[41]

The sequence of events underlying certain restitution claims is such that a defendant first obtains a benefit at the claimant's expense while acting rightfully, and only at some later time does the retention of the benefit become wrongful.[42]  In other situations, the defendant's wrongful conduct toward a claimant predates the

---

[37] 10 *Del. C.* § 8106.

[38] *Avantix*, 2012 WL 2309981, at *7. *See also Albert v. Alex Brown Mgmt. Serv., Inc.*, 2005 WL 1594085, at *13 (Del. Ch. Jun. 29, 2005) (stating that "[a] cause of action accrues under 10 *Del. C.* § 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action").

[39] *Vichi v. Koninklijke Phillips Electrical N.V.*, 2009 WL 4345724, at * 15 (Del. Ch. Dec. 1, 2009).

[40] *See* Restatement (Third) of Restitution and Unjust Enrichment § 70 (2010) (explaining that an unjust enrichment claim only accrues at the time when the plaintiff suffers an injury and is able to bring suit); *see also* 54 C.J.S. *Limitations of Action* § 196 (2018) (describing that for the purposes of the statute of limitations, a claim for unjust enrichment only accrues on the date when a plaintiff could first have brought his or her suit).

[41] 54 C.J.S. *Limitations of Action* § 196 (2018).

[42] Restatement (Third) of Restitution and Unjust Enrichment § 70 (2010).

point at which the defendant acquires the benefit later characterized as unjust enrichment.[43] Both situations are governed by the general rule that a cause of action in restitution does not accrue until all its elements are present.[44] Just as there is no unjust enrichment before there has been enrichment, there is no unjust enrichment before the defendant's retention of a benefit becomes unjust.[45]

The undisputed facts in this case provide that Ms. Taplin's quasi-contractual claims did not accrue before Ms. Schuitemaker received her disability settlement on May 1, 2016.[46] At that point, for statute of limitation purposes, the claim accrued. There was no unjust retention of a benefit prior to that point, because there was a promise to repay Ms. Taplin after receipt of the settlement money and not before. After Ms. Schuitemaker received her settlement money that allegedly should have been paid in part to Ms. Taplin, the quasi-contractual claims accrued because that was the point of the alleged unjust retention of the benefit. Thereafter, Ms. Taplin filed suit within one year. That was well within the three-year statute of limitations.[47]

## C. The Court of Common Pleas should have considered the Rule 41(b) motion to dismiss in light of the amended complaint.

Third and finally, Ms. Taplin appeals the trial court's decision to grant Ms. Schuitemaker's motion to dismiss the case pursuant to Rule 41(b).[48] The Court of

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] For the reasons discussed *infra*, the record does not establish that the trial court's dismissal of Ms. Taplin's contractual claims constituted error. Accordingly, the Court need not address the issue of whether the contract claim accrued at that time of her settlement in May 2016 or in July 2016 when she sent the email for the first time stating she refused to repay what she had earlier acknowledged as owing.

[47] Accordingly, the Court need not address the evidence of record regarding acknowledgements of the debts by email, and whether those acknowledgements tolled the statute of limitations. The Court holds that the quasi-contractual causes of action did not accrue until May 1, 2016 at the earliest. Ms. Taplin filed suit less than one-year later.

[48] Ct. Com. Pl. Civ. R. 41(b).

Common Pleas, at the evidentiary threshold required by Rule 41(b), found that Ms. Taplin failed to demonstrate a landlord-tenant relationship between her and her sister. Additionally, it found that because there was no expert testimony regarding the rental value of the property, the claim should likewise be dismissed. It presumably based this alternative ruling on Ms. Taplin's failure to prove damages to the reasonable certainty required in a contract action.[49]

Court of Common Pleas Civil Rule 41(b) permits a court to dismiss an action involuntarily on a defendant's motion. A judgment entered following a dismissal for insufficiency of the evidence is a final, adverse judgment, to the plaintiff, and the plaintiff may appeal it.[50] Accordingly, a dismissal on this ground involves a determination of the merits, rather than an exercise of discretion by the trial court.[51] The usual standards applicable to the review of a judgment on the merits in a nonjury case control.[52] The conclusions of law are freely reviewable, although the findings of fact of the trial court cannot be set aside unless they are clearly erroneous.[53] Thus, because an involuntary dismissal is an adjudication on the merits, it is "with prejudice."[54] In a nonjury case, Rule 41(b) fulfills the function of a motion for judgment as a matter of law in a jury case.[55] A motion for judgment as a matter of law in a nonjury case is often resolved as a motion to dismiss under Rule 41(b),

---

[49] *See LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sep. 4, 2007), *aff'd* 956 A.2d 642 (Del. 2009) (TABLE) (explaining that "[i]n order to prevail on their claim for breach of contract, plaintiffs must show by a preponderance of the evidence: first, that an express or implied contract existed; second, that defendant breached that contract; and third, that the breach of contract led to damages suffered by plaintiffs. In order to satisfy the final element, plaintiffs must show both the existence of damages provable to a reasonable certainty, and that these damages flowed from defendant's violation of the contract").

[50] 9 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2376 (3d ed. 2008).

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] 9 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2373 (3d ed. 2008).

[55] 9 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2371 (3d ed. 2008).

17

while a motion to dismiss in a jury case will be treated as if it were a motion for judgment as a matter of law under Rule 50(a).[56]

As a threshold matter, the trial court did not err when it dismissed Ms. Taplin's contract claim. A review of the evidence of record supports that the trial court's findings regarding the contract claim were the product of an orderly and logical deductive process.

Nevertheless, since the trial court did not consider Ms. Taplin's quasi-contractual claims, the case must be remanded for it to consider those claims and to decide them on their merits. When doing so, the trial court is free to do so based on the record before it or in its discretion to permit additional evidence. Furthermore, the trial court may consider whether (1) Ms. Schuitemaker's claim that the expenses Ms. Taplin paid for her sister's benefit were gifts, or (2) if those benefits were unjustly retained under circumstances that satisfy the elements of one or more of Ms. Taplin's three quasi-contractual claims.

## IV. CONCLUSION

For the reasons discussed, the Court of Common Pleas' decision in this matter is **REVERSED, in part**, and **REMANDED** for action consistent with this Order.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge

JJC/jb
*Via File & ServeXpress*

---

[56] *Id.* at §2371.

18