# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AVVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-10-011 RRC |
| | ) | |
| UPSTACK TECHNOLOGIES, INC., | ) | |
| f/k/a ALT TAB, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: March 4, 2019
Decided: April 12, 2019

On Defendant's Motion to Dismiss
Count 3 of Plaintiff's Amended Complaint.
**GRANTED.**

## MEMORANDUM OPINION

Tiffany M. Shrenk, Esquire, and Andrew R. Silverman, Esquire, MacElree Harvey, LTD, Centreville, Delaware, Attorneys for Plaintiff Avve, Inc.

Barry M. Klayman, Esquire, and Matthew Bleich, Esquire, Cozen O'Connor P.C., Wilmington, Delaware, Attorneys for Defendant Upstack Technologies, Inc.

COOCH, R.J.

## I. INTRODUCTION

Upstack Technologies, Inc. ("Defendant") has moved to dismiss Count 3 of Avve, Inc.'s ("Plaintiff") Amended Complaint, pursuant Superior Court Civil Rule 12(b)(6). Plaintiff's complaint arises out of an alleged breach of a commercial services contract between Plaintiff and Defendant. Plaintiff alleges that Defendant breached the contract in a number of ways and committed fraud. The breach of contract claims, Counts 1 and 2 of the Amended Complaint, are unchallenged by

1

Defendant in the instant motion to dismiss, and a Trial Scheduling Order has been issued for those counts.

Count 3 claims that Defendant committed fraud under Delaware law by allegedly misrepresenting certain aspects of Defendant's business prior to the parties entering into the service contract. Defendant's primary argument is that Plaintiff has failed to satisfy the heightened pleading requirements for fraud claims under Superior Court Civil Rule 9(b). Defendant argues that Plaintiff has not plead fraud with sufficient particularity and specificity as required by Rule 9(b). Plaintiff counters that the complaint sufficiently apprises Defendant of the nature of the claim and thus satisfies Rule 9(b).

The Court concludes that Count 3 of Plaintiff's Amended Complaint does not meet the heightened pleading standards of Rule 9(b). Accordingly, Defendant's Motion to Dismiss Count 3 of the Amended Complaint is granted.

## II. FACTS AND PROCEDURAL HISTORY

Avve, Inc. provides digital layaway services for e-commerce retailers and their customers. Ms. Patricia Hauseman served as Avve's Chief Executive Officer. Upstack Technologies, Inc. provides website-building and maintenance services by providing software developers for its clients. Upstack advised potential clients that it selects the developer from a network of engineers, and all undergo a rigorous hiring process to ensure that each engineer "possess[es] top tier communication, personality, and tech skills."[1] Mr. Yossi Mlynsky served as Upstack's Chief Executive Officer.

In August 2016, Hauseman contacted Mlynsky to inquire about Upstack's services. Hauseman wished to hire Upstack to develop an application and website for Avve. During this initial "telephone conversation[,]" Hauseman explained the nature of Avve's business and that Avve desired a developer to build a website and an application to improve Avve's business practices.[2] Over the next six months, the two CEOs communicated "via email" in which Hauseman provided further detail regarding the nature of Avve's business and the products Avve wanted Upstack to develop.[3] Hauseman explained that Avve's business depended on a quick and simple

---

[1] Pl.'s Am. Compl. at 2 ¶7, *Avve, Inc. v. Upstack Technologies, Inc.*, N18C-10-011 RRC, Trans. No. 62806609 (Dec. 28, 2018). The factual scenario is derived from Plaintiff's Amended Complaint, unless otherwise noted.

[2] *Id.* at ¶8.

[3] *Id.* at 3 ¶9.

2

e-commerce environment for its customers, and that Avve envisioned an intuitive and effortless process for customers to access applications. The two CEOs also met at the end of January 2017. At this meeting Hauseman provided Mlynsky with specific webpages the website should have, and the specific steps and actions that the developed products would need to accomplish in order to satisfy Avve's business needs.

On February 27, 2017, the parties entered into a written agreement for the development of a website and an application for Avve. The contract designated an individual, "Dragos S.," to develop the website and application. Unbeknownst to Avve, Dragos apparently suffered from a serious medical condition which hampered his ability to consistently work on the Avve project. Avve discovered Dragos' medical issue about six months after the parties entered into the contract. Avve also claims that Dragos was not fluent in English, as allegedly evidenced by numerous alleged spelling and grammatical errors.

By October 2017 development progressed at a crawl. Dragos had not provided a working product in over six months and Avve was forced, it claims, to secure an independent senior developer to take over the work. Thereafter, Avve says that it was made aware of a slew of problems with Dragos' work. Avve claims that Dragos' performance was substandard because, *inter alia*, he used outdated programming techniques, failed to prevent overwriting of user data, used excess code which unnecessarily lengthened development time, and failed to properly document code for future developers.[4] By November 2017, nine months after the parties entered into the contract, Avve asserts that it did not have a working website or application. Avve terminated the contract in November 2017.

Thereafter, Avve filed suit claiming Defendant breached the service contract, breached the covenant of good faith and fair dealing, and committed common law fraud.[5] Specifically, Count 3 alleges that Defendant committed fraud throughout the course of the pre-contract discussions from August 2016 to January 2017. Mlynsky allegedly committed fraud by making false promises and assurances regarding the quality of Upstack's services. In the complaint, Avve alleges that:

---

[4] *See id.* at 8–9 ¶29.
[5] In Plaintiff's original complaint, Count 3 claimed Defendant violated New York State General Business Law § 349 for misleading and deceptive business practices. Defendant filed a motion to dismiss this claim. Plaintiff apparently agreed that Delaware law in fact controlled, and the parties agreed to allow Plaintiff time to amend the complaint. Plaintiff filed an amended complaint which replaced the New York law claim with a claim of common law fraud under Delaware law as the new Count 3.

57. From August 2016 through February 2017, in its course of dealing with Plaintiff (as described above in paragraphs 5 through 37), Defendant [through Mlynsky] made the following misrepresentations of fact to Plaintiff:

a. that Defendant engages only developers within the top 1% in their domain. Upstack would designate a senior level developer to develop Avve's website and application;

b. that Defendant only hires senior engineers;

c. that Defendant pre-vets their developers to ensure that they have the necessary skillset to perform the services for Defendant's customers;

d. that Defendant assigns only top-tier developers to perform services for Defendant's customers;

e. that the developer designated for Plaintiff's project would be fluent in English;

f. that [Mlynsky] will be involved in the development of products bargained-for by Plaintiff;

g. that Plaintiff would be matched with a senior Upstack expert in their domain; **and/or**

h. that the development of Plaintiff's website and application would be completed within approximately four (4) months.[6]

Avve asserts that Mlynsky "knew that the aforementioned misrepresentations were false, or made the representation[s] with a reckless indifference to the truth."[7] Based on Dragos' substandard work, Defendant allegedly "knew or should have known" that Dragos lacked the skills to complete the project.

Defendant has moved to dismiss Count 3 of the Amended Complaint under Rule 12(b)(6), alleging that the allegations within Count 3 do not meet the heightened pleading standards of Rule 9(b). Briefing on Defendant's motion started off in an orderly manner, with Plaintiff filing its Response on February 8, 2019, and Defendant filing its Reply Brief on February 22. However, after the parties had submitted their briefs, and after the close of business March 1, 2019—the Friday before oral argument on March 4—Plaintiff filed an affidavit from Hauseman purportedly to supplement Plaintiff's Answering Brief to Defendant's Motion to Dismiss. The affidavit sought to explain in further detail the misrepresentations of fact that Plaintiff alleged that Defendant had stated. No permission was sought from or given by the Court to file the affidavit.

---

[6] Pl.'s Am. Compl. at 15 ¶57 (emphasis added).

[7] *Id.* at 16 ¶58.

4

## III. THE PARTIES' CONTENTIONS

### A. Defendant's Contentions

First, Defendant argues that Count 3 of the Amended Complaint does not satisfy the Rule 9(b) heightened pleading requirements. Rule 9(b) requires that allegations of fraud to "be stated with particularity."[8] Defendant contends that Plaintiff has not met the Rule 9(b) burden because Plaintiff failed to state the time, place, or manner of the communications with sufficient particularity. Defendant argues that Plaintiff has only asserted a broad six-month time frame in which the misrepresentations occurred. Defendant contends that the complaint does not set forth exactly when within the six-month time frame each misrepresentation is alleged to have occurred, does not set forth how the misrepresentations were communicated, and does not sufficiently explain to whom the misrepresentations were stated.

Furthermore, Defendant argues that Plaintiff's use of the phrase "and/or," at the end of subparagraph 57(g), to join the six examples of alleged fraud, makes it unclear and otherwise ambiguous whether all or some of the alleged misrepresentations are claimed to have occurred.[9] Lastly, as it relates to particularity, Defendant objects to the Court considering Plaintiff's affidavit, on the grounds that was untimely filed. Defendant further contends that even if the Court were to consider the affidavit, it would not correct the deficiencies in Count 3 that Defendant has alleged. With all such ambiguity, with or without the affidavit, Defendant argues that Plaintiff's fraud claim must be dismissed.

Defendant also argues that Plaintiff's fraud claim impermissibly seeks the same damages allegedly caused by the breach of contract. Defendant asserts that Plaintiff cannot rehash the breach of contract claim and seek "materially identical damages" in the fraud claim.[10] Defendant contends that Plaintiff has merely "copy-

---

[8] Super. Ct. Civ. R. 9(b).

[9] Def.'s Reply Br. at 1, *Avve, Inc. v. Upstack Technologies, Inc.*, N18C-10-011 RRC, Trans. No. 62992905 (Feb. 22, 2019). Defendant's "and/or" argument is absent from its Opening Brief, and first appears in its Reply Brief. The Court notes that the "and/or" argument could have been raised in Defendant's Opening Brief, although the arguments made in Plaintiff's Answering Brief highlighted the importance of that phrase.

[10] Def.'s Opening Br. at 8, *Avve, Inc. v. Upstack Technologies, Inc.*, N18C-10-011 RRC, Trans. No. 62873859 (Jan. 17, 2019) (citing *ITW Glob. Investments Inc. v. Am. Indus. Partners Capital Fund IV, L.P.*, 2015 WL 3970908, at *5 (Del. Super. Ct. June 24, 2015)).

and-paste[d]" its breach of contract damages into its fraud claim.[11] Without any distinction between the damages, Defendant argues, Plaintiff's claim must be dismissed.

Lastly, Defendant contends that Plaintiff's fraud claim is impermissible "'bootstrap[ing]' a claim of breach of contract into a claim of fraud[.]"[12] Defendant argues that Plaintiff has failed to set forth specific factual allegations to support a reasonable inference that Defendant never intended to comply with the contract. Defendant argues that Plaintiff "simply add[ed] the term 'fraudulently induced' to [the] complaint[.]"[13] As such, Defendant argues that Plaintiff's fraud claim must be dismissed.

### B. Plaintiff's Contentions

In defense of Count 3, Plaintiff argues that the fraud claim is sufficiently particularized for Rule 9(b) purposes. Plaintiff urges the Court to review the complaint as a whole, particularly the sections that Count 3 incorporates by reference. Plaintiff argues that the complaint illustrates the specific identities of the involved parties, and the specific time, location, and content of the alleged misrepresentations. Plaintiff alleges that Mlynsky misrepresented facts to Hauseman. Plaintiff contends that the alleged misrepresentations occurred during telephone conversations, by email, and face-to-face from August 2016 to January 2017.[14] Plaintiff relies on its characterization of the contents of the misrepresentations in subparagraph 57(g) of the complaint.[15] Plaintiff contends that if the Court would require anything more at this stage, Plaintiff would be required "to plead evidence, which is beyond the pleadings requirement at this early stage of the proceedings."[16]

Plaintiff further argues that because the alleged misrepresentations occurred prior to the parties entering into the contract—and were allegedly intended to induce Plaintiff to enter into the contract—the alleged misrepresentations constitute "separate and distinct" conduct from which a fraud claim can stand separately and

---

[11] *Id.* (citing *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *6 (Del. Super. Ct. June 27, 2016)).
[12] *Id.* at 9 (quoting *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010)).
[13] *Id.* (quoting *Narrowstep*, 2010 WL 5422405, at *15).
[14] *See* Pl.'s Am. Compl. at 2–4, ¶¶8–12.
[15] *See id.* at 15–16, ¶57.
[16] Pl.'s Answ. Br. at 7, *Avve, Inc. v. Upstack Technologies, Inc.*, N18C-10-011 RRC, Trans. No. 62945231 (Feb. 8, 2019) (citing *Narrowstep*, 2010 WL 5422405, at *13).

6

alongside a breach of contract claim.[17] Plaintiff contends that the separate and distinct nature of the conduct makes the potential damages separate from any breach of contract damages. For example, at oral argument Plaintiff's counsel stated that Hausman took steps in reliance on the alleged misrepresentations prior to entering into the contract, which would result in separate damages. For the same reasons, Plaintiff argues that Count 3 does not constitute impermissible bootstrapping.

Regarding Plaintiff's affidavit, Plaintiff contends that it should be considered by the Court as it addresses the particularity issues alleged by Defendant. As for its untimeliness, Plaintiff's counsel explained that affidavit "wasn't something [the client] was able to provide to [Plaintiff's counsel] until [a few days before oral argument]."[18] Plaintiff maintained that Count 3 is still sufficient without the affidavit. Plaintiff in its Answering Brief did not request, in the alternative, to potentially later amend its complaint if Count 3 was dismissed. Plaintiff addressed this at oral argument, and stated that if the Court were to find that Count 3 was fatally deficient under Rule 9(b), then Plaintiff "would [] have to amend" its complaint to include the allegations contained in the affidavit.[19]

## IV. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6) the Court "(i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[20] Although Rule 12(b)(6) permits some leniency, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[21]

Delaware is a "notice pleading" state, and in most civil actions the rules of procedure require that the plaintiff simply provide a short and plain statement which

---

[17] *Id.* at 10 (quoting *Hiller & Arban LLC v. Reserves Mgmt. LLC*, 2016 WL 3678544, at *4 (Del. Super. Ct. July 11, 2016)).

[18] Tr. of Oral Argument at 10 ln.22, *Avve, Inc. v. Upstack Technologies, Inc.*, N18C-10-011 RRC (Mar. 4, 2019).

[19] *Id.* at 10 lns.12–13.

[20] *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970, at *5 (Del. Super. Ct. Oct. 11, 2017) (citing *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011)).

[21] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

gives the defendant "fair notice of a claim[.]"[22] The plaintiff "need not plead evidence, but allege facts that, if true, state a claim upon which relief can be granted."[23] Superior Court Civil Rule 9(b) deviates from this general rule and imposes a heightened pleading standard for allegations of fraud.

Rule 9(b) states that "[i]n all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity."[24] "The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[25] Intent, knowledge, malice, and other states of mind may be averred generally.[26] However, if the central facet of the claim of fraud is a "charge that the defendant knew something, there must be sufficient well-pled facts from which it can be reasonably inferred that this something was knowable and that the defendant was in a position to know it."[27] Failure to plead with sufficient particularity can warrant dismissal of a fraud claim.

## V. DISCUSSION

### A. The Court will not consider Plaintiff's untimely affidavit.

First, the Court will address the affidavit that Plaintiff filed in an apparent attempt to improve its position prior to oral argument on Defendant's motion. The affidavit was not attached to Plaintiff's Answering Brief to Defendant's Motion to Dismiss, which was filed February 8, 2019. Nor did Plaintiff ask the Court for permission to file the affidavit. Instead, the affidavit was simply filed on Friday, March 1, 2019, at 4:57 p.m., along with a letter to the Court stating that Plaintiff's counsel "*may* refer to [the affidavit] during ... oral argument[.]"[28] Oral argument on Defendant's motion was scheduled for the morning of the next business day, Monday, March 4, at 9:00 a.m. Plaintiff apparently did not attempt to advise the

---

[22] *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) (citing *Michelson v. Duncan*, 407 A.2d 211, 217 (Del.1979)).

[23] *Id.*

[24] Super. Ct. Civ. R. 9(b).

[25] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207–08 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).

[26] *See* Super. Ct. Civ. R. 9(b).

[27] *Trenwick*, 906 A.2d at 208.

[28] Letter to the Court from Pl.'s Counsel, *Avve, Inc. v. Upstack Technologies, Inc.*, N18C-10-011 RRC (Mar. 1, 2019) (emphasis added).

Court, in any manner, that this affidavit and letter had been filed. The Court first learned of the existence of the affidavit during oral argument when advised of same by defense counsel during defense counsel's opening argument.[29]

At oral argument, Plaintiff's counsel explained that the affidavit was intended to address the particularity arguments raised by Defendant.[30] However, the affidavit does not address Defendant's other arguments: 1) Plaintiff's reliance on the phrase "and/or," 2) allegedly impermissible bootstrapping, and 3) allegedly materially identical damages.[31] As to the lateness of the filing, Plaintiff's counsel explained the untimeliness was due to amount of papers and notes her client had to review to create the affidavit.[32] When asked by the Court why the facts in the affidavit were not set forth in the Amended Complaint, or alternatively, attached to Plaintiff's Answering Brief to give Defendant the opportunity to respond in writing to the affidavit, Plaintiff's counsel stated that "…all I can say [is] it wasn't something that we were able to have our client put together.[33] Plaintiff's counsel said nothing about when Plaintiff's CEO was first requested to supply the new information, and the Court cannot see why such particularity was not known to Plaintiff when it filed its Amended Complaint.

The Court inquired at oral argument whether consideration of the affidavit by the Court might transform the motion to dismiss into a motion for summary judgment, pursuant to Rule 12(b)(6).[34] Defendant objected to any such consideration of the affidavit because of the untimeliness of its submission. If the Court were to consider the affidavit, Defendant argued, the affidavit did not sufficiently supplement Plaintiff's fraud claim to overcome the alleged deficiencies.[35] Plaintiff argued that Rule 12(b)(6) requires that the Court "give [the parties] an opportunity to respond and then to state whether or not [the parties] are agreeable" to the conversion.[36] The Court need only reach this Rule 12(b)(6) issue if the affidavit is not excluded.

---

[29] *See* Tr. of Oral Argument at 6–7.
[30] *Id.* at 9 ln.8.
[31] *See id.* at 8 lns.7–15.
[32] *See id.* at 10 lns.21–23, 11 lns.1–15.
[33] *Id.* at 11 lns.11–12.
[34] *See* Super. Ct. Civ. R. 12(b). "If, on a motion asserting the defense numbered (6) to dismiss … matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" *Id.*
[35] *See* Tr. of Oral Argument at 22.
[36] *Id.* at 9 lns.15–16.

Delaware courts are afforded broad discretion to enforce court orders and rules of procedure.[37] Pursuant to Rule 107(f) the Court is vested with discretion to allow an untimely submission upon a "showing of good cause in writing[.]"[38] "Good cause is likely to be found when the moving party had been diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party."[39] If such a showing is not made, the Court "in its discretion ... [can] take such other action as it deems necessary to expedite the disposition of the case."[40]

Here, Plaintiff's counsel's only explanation for the untimely filing was that her client was unable to complete the affidavit or otherwise communicate the facts in the affidavit to Plaintiff's counsel at a much earlier date. Despite the apparent known delay however, Plaintiff did not seek to notify the Court that there was a pending affidavit which may be pertinent to the merits of Defendant's Motion to Dismiss. Nor did Plaintiff request leave to file a supplemental response out of time, or, apparently, contact Defendant's counsel about this issue. Additionally, it appears to the Court that the few facts set forth in the affidavit could have been included in the Amended Complaint. Plaintiff has not provided a satisfactory explanation as to why the facts were produced at such a late date. Further, Plaintiff's actions, or lack thereof, have deprived Defendant of the opportunity to respond in writing to the affidavit and its contents. Such a scenario does not constitute excusable neglect or good cause. The affidavit will be excluded, and the Court will not consider its contents.

B. *Count 3 of Plaintiff's Amended Complaint fails to satisfy the heightened pleading standard of Rule 9(b).*

In Count 3, Plaintiff alleges Defendant committed fraud in the inducement by making several misrepresentations as to the nature of Defendant's business, and the skill and credentials of Defendant's employees. By claiming that Defendant committed fraud, Plaintiff must comply with the heightened standards of Rule 9(b). Plaintiff must state with particularity factual circumstances relating to the identity of the person making the misrepresentations as well as the time, place, and contents of

---

[37] *See generally Solow v. Aspect Resources, LLC*, 46 A.3d 1074, 1075 (Del. 2012) ("Delaware trial courts have inherent power to control their dockets."); *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1108 (Del. 2006) (ruling that plaintiffs' affidavit was properly excluded as untimely expert testimony).

[38] Super. Ct. Civ. R. 107(f).

[39] *Lundeen v. PricewaterhouseCoopers, LLC*, 2007 WL 646205, at *2 (Del. Mar. 5, 2007).

[40] Super. Ct. Civ. R. 107(f).

false representations.[41] Although Count 3 of Plaintiff's Amended Complaint states with particularity the identity of the person allegedly making the misrepresentations, Mlynsky, the remainder of Count 3 is not sufficiently particular under Rule 9(b).

Plaintiff's fraud claim in Count 3 is similar to the fraud claim brought in this Court in *Khushaim v. Tullow Inc.* In *Khushaim*, the plaintiff alleged that the defendant not only breached a contract, but committed fraud by making "several false statements and misrepresentations of material fact regarding essential parts of the [underlying contract.]"[42] Khushaim alleged that Tullow falsely stated that "they would develop the subject mobile applications, that they would deliver final versions of the two mobile applications, and that they would return Kushaim's copyrighted software designs."[43]

Tullow moved to dismiss Khushaim's claim of fraud arguing that the allegations did not meet Rule 9's particularity standard, much the same as Defendant's motion before the Court now. The *Khushaim* Court ultimately held that "[n]othing in Khushaim's Complaint approaches Rule 9(b)'s particularized facts standard."[44] Khushaim's fraud claim was ruled deficient because Khushaim merely alleged that Tullow "knew or should have known"[45] that it made misrepresentations, and "what little content Khushaim provide[d] [was] a simple reprise of the allegations made in Khushaim's breach of contract claim."[46] Khushaim supported his fraud claim "with nothing more than Tullow's alleged intention not to follow through with its contractual obligations[.]"[47]

Plaintiff's Count 3 is deficient in a similar manner to the *Khushaim* fraud claim. The allegations in Count 3 are simply generalized accusations that Defendant did not intend to fulfill contractual obligations. The complaint lists eight ways Mlynsky allegedly misrepresented the nature of Defendant's business and its ability to perform.[48] The listed misrepresentations are not purported to be direct quotations or semi-quotations of Mlynsky's statements. Rather, the list appears to the Court to be the general character of what Mlysnky was to have allegedly represented. Further,

---

[41] *See Trenwick*, 906 A.2d at 208.

[42] *Khushaim v. Tullow, Inc.*, 2016 WL 3594752, at *5 (Del. Super. Ct. June 27, 2016).

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at *6.

[47] *Id.*

[48] *See* Pl.'s Am. Compl. at ¶57; *see also id.* at ¶¶9–11.

none of the alleged misrepresentations are connected to any particular communication between the parties.

Count 3's description of the timing of the fraudulent conduct is imprecise. Plaintiff contends that Mlynsky made false statements "during the course of [] pre-contract email communications and meetings[.]"[49] These communications occurred over a six-month time period, from August 2016 to January 2017. There was the alleged phone conversation between the parties' CEOs "in or about August 2016[.]"[50] There were the alleged email communications between the CEOs from August 2016 to January 2017. Finally, there was the alleged face to face meeting "in or about the end of January 2017[.]"[51] The complaint does not provide more specific dates, and Plaintiff does not link any specific conversation to any one of the listed alleged misrepresentations. It is unclear to the Court why the complaint does not provide the precise date for the late January 2017 meeting between the CEOs. Far more perplexing is the failure to provide the specific dates and the content of the e-mail conversations, considering electronic communication is generally a permanent medium.

Notably, Plaintiff injects additional ambiguity into the allegations of fraud by relying upon the phrase "and/or" when identifying the alleged misrepresentations.[52] By its very nature, "and/or" is an ambiguous phrase which often produces uncertainty.[53] Courts and legal writing scholars are largely in agreement that "and/or" is "much-maligned and overused … and generally should be avoided[.]"[54] Courts and legal writers routinely condemn the phrase.[55]

---

[49] Pla.'s Answ. Br. at 7; *see* Pl.'s Am. Compl. at ¶ 11.

[50] Pla.'s Answ. Br. at 2

[51] *Id.* at 3.

[52] *See* Pl.'s Am. Compl. at ¶57.

[53] *See* William Strunk Jr., *Elements of Style*, at 40 (4th ed. 1990) (explaining that and/or is "[a] device, or shortcut, that damages a sentence and often leads to confusion or ambiguity.").

[54] *Sandman v. Farmers Ins. Exch.*, 969 P.2d 277, 281 (Mont. 1998); *see* Bryan A. Garner, *The Elements of Legal Style* 103 (2d ed. 2002) ("Banish from your working vocabulary ['and/or']."); Bryan A. Garner, *The Redbook: A Manual on Legal Style* 43 (2002) ("The slash … is known as the star character in two grammatical abominations: and/or and he/she. It is especially unfit for legal writing because it is inherently ambiguous.").

[55] "It is manifest that we are confronted with the task of first construing 'and/or,' that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase[.]" *Employers' Mut. Liability Ins. Co. of Wisconsin v. Tollefsen*, 263 N.W. 376, 377 (Wis. 1935). *See also California Trout Inc. v. State Water Resources Bd.*, 207 Cal.App.3d 585, 603 n.8 (Cal. Ct. App. 3d. 1989) (condemning and/or as "taboo"); *Raine v. Drasin*, 621 S.W.2d 895, 905 (Ky. 1981) ("This error is

When the Court asked Plaintiff's counsel "why use [and/or,]" Plaintiff's counsel explained that it was used "to the extent that one [allegation] does not survive throughout the discovery period."[56] Regardless of intent, the phrase has created demonstrable ambiguity in Count 3. The phrase allows Plaintiff essentially to rely on only one specific claim of fraud—which potential sole claim is not identified—or allows Plaintiff to potentially rely on up to all eight specific allegations, or some combination of the eight allegations thereof. Plaintiff's use of the phrase suggests, in Defendant's words, that Plaintiff is not "sure which of the alleged misstatements may actually have happened in the first place."[57] The use of such a phrase, and the ambiguity it creates, is almost always inappropriate in a Rule 9(b) pleading. In some other context the phrase might not be as problematical, perhaps even innocuous. However, in the instant Rule 9(b) context the ambiguous phrase serves to contribute to Count 3's fatal deficiencies.

The complaint states the general character of the alleged misrepresentations. The complaint states that the alleged misrepresentations occurred over a period of six months, but does not state what conduct falls where or how the content was communicated. Further, the language of the complaint creates a situation where any of the alleged misrepresentations could have occurred at any of the conversations. Such an imprecise set of facts lacks enough particularity to fully apprise Defendant of the allegations of fraud and does not satisfy the particularity requirements of Rule 9(b). Count 3 will be dismissed.

### C. The Court will not grant Plaintiff leave to amend Count 3 of the amended complaint.

Plaintiff stated, for the first time at oral argument, that if the Court were to dismiss Count 3 for failure to satisfy Rule 9(b) Plaintiff could "cure" any deficiencies with the affidavit.[58] As previously discussed, the Court has inherent power to control its dockets and maintain orderly adjudication of claims.[59] Pursuant to Rule 15, a party may amend a pleading upon a request to the Court, and "leave [to amend] shall be freely given when justice so requires."[60] In this case, Plaintiff previously had the

---

achieved by use of the much condemned conjunctive-disjunctive crutch of sloppy thinkers, and/or.").

[56] Tr. of Oral Argument, at 16 lns.1–5.

[57] Def.'s Reply Br., at 1.

[58] *See* Tr. Of Oral Argument, at 10 ln.7.

[59] *See Solow v. Aspect Resources, LLC*, 46 A.3d 1074, 1075 (Del. 2012) ("Delaware trial courts have inherent power to control their dockets.").

[60] Super. Ct. R. Civ. 15(a).

opportunity to amend its complaint to conform to Delaware law, but the attempt has been unsuccessful. Plaintiff stated that if it was allowed to amend the complaint it would simply add the information from its untimely affidavit.[61] Plaintiff has not provided a satisfactory explanation as to why the information in its affidavit could not have been included in the prior complaints in the first place. "It is no small matter to be accused of fraud,"[62] and the Court will not grant Plaintiff permission to continuously amend its accusation until something sticks. Plaintiff shall not be permitted to amend its complaint to address its allegations of fraud.

## VI. CONCLUSION

Plaintiff has failed to plea the elements of fraud with sufficient particularity. Plaintiff's allegation of fraud is averred generally, contrary to the requirements of Rule 9(b). As such, Count 3 must be dismissed. For the foregoing reasons, Defendant's Motion to Dismiss Count 3 of Plaintiff's Amended Complaint is **GRANTED.**[63]

**IT IS SO ORDERED.**

_____
Richard R. Cooch, R.J.

cc:     Prothonotary

---

[61] *See* Tr. of Oral Argument, at 10 lns. 12–14.

[62] Def.'s Reply Br., at 2.

[63] As the Court finds that Count 3 of the Amended Complaint is violative of Rule 9(b), the Court need not reach Defendant's alternative arguments in support of dismissal of Count 3 of "materially identical damages" or "impermissible bootstrapping."

14